**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CERNER INNOVATION, INC.,

Plaintiff,

v. Jury Trial Demanded

EXCEL MEDICAL ELECTRONICS, LLC and
EXCEL MEDICAL ELECTRONICS, INC.,

Defendants.
_______________________________________/

# COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cerner Innovation, Inc. brings this Complaint for patent infringement against Defendants Excel Medical Electronics, LLC and Excel Medical Electronics, Inc. (collectively "Excel") as follows:

## I. Introduction and Parties

1. Plaintiff Cerner Innovation, Inc. ("Cerner") is a Delaware corporation with its principal place of business in Kansas City, Kansas.

2. Plaintiff Cerner is a wholly owned subsidiary of Cerner Corporation and is the owner, by assignment, of an extensive portfolio of United States patents directed to the innovative technology embodied by Cerner Corporation's healthcare solutions.

3. Cerner Corporation is an industry leader in healthcare information technology solutions. Cerner Corporation's technologies connect people, information and systems at more than 25,000 provider facilities worldwide. Cerner Corporation solutions are in over 5700 hospitals and have over 450,000 physician users. Cerner Corporation employs over 24,000 associates, has a cumulative research and development investment of over $4.9B and had $4.4B


Shook, Hardy & Bacon L.L.P.
Miami Center, Suite 3200 | 201 S. Biscayne Blvd. | Miami, Florida 33131-4332 | t 305.358.5171

in revenue in 2015. Cerner Corporation has sold to many of the top medical facilities in Florida and throughout the world.

4. Cerner Corporation has received numerous accolades for its innovative solutions. Recognized for innovation, Cerner Corporation's solutions assist clinicians in making care decisions and enable organizations to manage the health of populations. Cerner Corporation's mission is to contribute to the systemic improvement of health care delivery and the health of communities.

5. Cerner Corporation's CareAware® suite of solutions enable interoperability between medical devices, health care applications and the EHR, regardless of vendor. Through CareAware, Cerner Corporation's architecture, devices are integrated to provide an automatic flow of information for health care professionals to consult in the patient EHR as the Single Source of Truth. This ensures the right data is presented in the right format at the right time to improve health outcomes. Cerner Corporation's investment in its robust interoperability platform led to the creation of several value-added solutions which optimize workflow, transform the patient experience and improve the quality of care delivery. These novel and non-obvious technologies were developed at great expense and have received numerous patents.

6. Cerner Corporation's solutions help customers seamlessly and securely gather, transmit, and analyze medical data of patients to create a comprehensive medical record that spans a patient's lifetime—giving patients the ability to benefit from a complete and detailed electronic medical record.

7. As explained herein, Excel's infringement has harmed Cerner. Without authorization, Excel has made, sold, offered to sell, used and/or imported products and services that infringe Cerner's patents, and has induced others to infringe Cerner's patent rights.

8. Defendant Excel Medical Electronics, LLC is a Florida limited liability company with its principal place of business in Jupiter, Florida. Excel Medical Electronics, LLC maintains its principal place of business at 801 Maplewood Dr., Suite 26, Jupiter, Florida 33458.

9. Defendant Excel Medical Electronics, Inc. is a Florida corporation with its principal place of business in Jupiter, Florida. Excel Medical Electronics, Inc. maintains its principal place of business at 801 Maplewood Dr., Suite 26, Jupiter, Florida 33458.

10. Excel claims its technologies are used by more than 80% of the top medical centers and children's hospitals in the United States, as well as leading healthcare facilities throughout North America, Europe, Australia, and Asia.

## II. Jurisdiction and Venue

11. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including §§ 271 and 281. Thus, this Court has original subject matter jurisdiction under 28 U.S.C. § 1338(a).

12. Excel is subject to personal jurisdiction in the State of Florida and of this Court.

13. Excel is responsible for acts of infringement occurring in the Southern District of Florida. For example, as alleged herein, Excel has delivered or caused to be delivered infringing products or services in the Southern District of Florida, has induced persons in this District to infringe Cerner's patents, is doing business in this District, recruits personnel from this District, employs employees from this District, seeks to employ persons from this district, advertises and markets its infringing products and services in this District, and seeks to sell its products and services to residents of this District and beyond (including via its website at http://excel-medical.com/).

14. Venue is proper in this Court under 28 U.S.C. §§ 1400(b), 1391(b) and 1391(c).

15. Excel is considered to be a resident of this District, and venue is proper in this Court under 28 U.S.C. §§ 1400(b), 1391(b) and 1391(c).

16. Excel is headquartered in the Southern District of Florida, where harm from Excel's infringement has been and is being felt.



Shook, Hardy & Bacon L.L.P.
Miami Center, Suite 3200 | 201 S. Biscayne Blvd. | Miami, Florida 33131-4332 | t 305.358.5171

## III. The '608 Patent

17. Plaintiff asserts two patents against Excel: U.S. Patent Nos. 7,430,608 ("the '608 patent") and 8,731,957 ("the '957 patent") ("the Asserted Patents," collectively).

18. The '608 patent is entitled "System for Processing Data Acquired from Multiple Medical Devices." A true and accurate copy of the '608 patent is attached as Exhibit 1.

19. The '608 Patent issued on September 30, 2008.

20. Cerner owns the right, title, and interest in the '608 patent, with full rights to pursue recovery of royalties or damages for infringement of the '608 patent, including full rights to recover past and future damages.

21. Each claim of the '608 patent is presumed valid and enforceable.

22. Each claim of the '608 patent is valid and enforceable.

23. The '608 patent describes a technical solution to a technical problem. For example, the '608 patent addresses the technical problem of integrating data from numerous medical devices that may use different protocols to communicate. In order to communicate with a computer system, each medical device may have its own set of drivers that translate the data from the medical device into a message that can be digested by the computer system. Thus, every addition of a medical device to computer system leads to added time for installation and configuration of the necessary drivers. This bulk of drivers not only taxes the resources, such as memory, of a given computer system—and also consumes the time of a clinician who must wait for the installation and configuration of an added medical device. With dozens of medical devices being used by numerous clinicians, this technical problem is greatly compounded across a large medical facility. Further, a medical facility's preexisting infrastructure, including medical devices acquired at high cost and lacking network connectivity, is difficult to leverage as health care technology continually evolves—causing medical facilities to either continue to use outdated technology or forfeit large amounts of capital spent to purchase medical devices.

24. The technical solution of the claimed invention is to provide, among other things, a solution that, in certain embodiments, allows the addition of new medical devices without installation lag time, aggregates other relevant information such as source and location of the medical data, and associates the data with a particular patient. '608 Patent at 2:1-14. A human being, or manual process, or paper-and-pencil process would not address the technical problem and would be too slow to accommodate users' and companies' expectations for being able to incorporate data from newly added medical devices.

25. As explained in greater detail below, Excel provides products and services that do the same thing as claimed by the '608 patent and actively encourages others to make, use, sell, offer for sale and/or import infringing products and services, including by using Excel's products and services.

## IV. The '957 Patent

26. The '957 patent is entitled "Mobile Discrete Data Documentation." A true and accurate copy of the '957 patent is attached as Exhibit 2.

27. The '957 Patent issued on May 20, 2014.

28. Cerner owns the right, title, and interest in the '957 patent, with full rights to pursue recovery of royalties or damages for infringement of the '957 patent, including full rights to recover past and future damages.

29. Each claim of the '957 patent is presumed valid and enforceable.

30. Each claim of the '957 patent is valid and enforceable.

31. The '957 patent describes a technical solution to a technical problem. For example, the '957 patent addresses the technical problem of the time-consuming and error-prone process of manual transfer of data from a medical device to an electronic medical record. The manual transfer of data by a clinician not only presents the risk of error in transferring the medical data, but also presents the risk of data being associated with the wrong patient. This risk

is especially apparent in systems involving mobile computer stations to input medical data. Often, a clinician shuttles a mobile computer station through the rooms of dozens of patients to aggregate vitals data, breeding the opportunity for error. Thus, the use of manual transcription of medical data exposes a medical facility to human error—which is multiplied over a large clinician staff at a medical facility. Manual transcription of data burdens clinicians with the prospect of analyzing inaccurate data, let alone data associated with the wrong patient, and potentially puts a patient's health at risk.

32. The technical solution of the claimed invention is to provide, among other things, a system where, in certain embodiments, real-time medical data is collected, associated with a patient, and stored for use in an electronic medical record. '957 Patent at 1:35-55. A human being, or manual process, or paper-and-pencil process would not address the technical problem and would be too slow to accommodate users' and companies' expectations for being able to incorporate real-time medical data into an electronic medical record.

33. As explained in greater detail below, Excel provides products and services that do the same thing as claimed by the '957 patent and actively encourages others to make, use, sell, offer for sale and/or import infringing products and services, including by using Excel's products and services.

## V. Cerner Corporation and Excel are Competitors.

34. Excel offers products and services that are similar to Cerner Corporation's solutions and services.

35. Cerner Corporation and Excel both offer health care information technology to integrate medical devices with electronic medical records, data analytics, and technology.

36. Excel and Cerner Corporation directly compete for customers and potential customers.

37. For example, in 2015, Excel began increasing publicity of its health care

information technology services (e.g., its "BedComm" platform) in direct competition with Cerner Corporation.

38. Cerner Corporation and Excel market their products using the same channels.

39. Excel seeks to take customers from Cerner Corporation.

## VI. Excel's Prior Knowledge of the Patents and Claims and Its Willful Infringement

40. Excel received actual notice of the '608 and '957 patents by August 2, 2016, through a letter sent from counsel for Plaintiff to Excel's President. The letter details Plaintiff's allegations that Excel's BedComm platform, including the medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel, infringes the '608 and '957 patents. Copies of both Asserted Patents were also enclosed with the letter.

41. Thus, Excel has had knowledge of the '608 and '957 patents (including actual knowledge) as described herein thereby making its infringement of the '608 and '957 patents willful.

42. Given Plaintiff's letter to Excel on August 1, 2016, which Excel received on August 2, 2016, Excel acted despite a high likelihood that its actions constituted infringement of valid '608 and '957 patents, and the risk was either known to Excel or so obvious that it should have been known to Excel.

43. For example, as explained, Excel was aware of Plaintiff's patents—but did not avoid or discontinue its infringement of the '608 and '957 patents.

## COUNT I – Direct Infringement
## Excel Directly Infringes the '608 Patent Under 35 U.S.C. § 271(a).

44. Paragraphs 1 through 43 are incorporated by reference herein.

45. Plaintiff alleges direct infringement in view of Excel's BedComm platform, including the medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel.

46. Excel has directly infringed, continues to directly infringe, and—unless enjoined—will continue to infringe the claims of the '608 patent by making, using, selling, offering for sale and/or importing the BedComm platform.

47. The BedComm platform includes computer-executable instructions for performing (and does perform) each element recited claims 1 - 19 of the '608 patent. For example, the BedComm platform performs a method of processing an Internet compatible format message including data acquired from at least one of a plurality of medical devices located at one of a plurality of patient bed stations, that method comprising each step recited by claim 10 of the '608 patent. Further, infringement allegations for claims 1 – 19 of the '608 patent are set forth in as Exhibit 3. The infringement analysis, and the exemplary evidence cited therein, is submitted without limitation and is subject to further modification as this action continues.

48. As a result of Excel's infringement of the '608 patent, Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief in the form of damages no event less than a reasonable royalty to compensate for Excel's infringement.

49. Excel has knowingly, willfully, and deliberately infringed the '608 patent in conscious disregard of Plaintiff's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284. Excel had notice of Plaintiff's patent infringement claim—but still continued to carry out the acts described herein.

50. Excel has demonstrated that it will continue to infringe the '608 patent, causing immediate and irreparable harm to Plaintiff unless this Court enjoins and restrains Excel's activities.

51. The infringement of the '608 patent by Excel has, and will, deprive Plaintiff and its parent corporation of sales, licensing fees, royalties or other related revenue which Plaintiff would have made or would enjoy in the future and will cause Plaintiff added injury and damage unless Excel is enjoined from infringing the '608 patent until the expiration of the '608 patent.


Shook, Hardy & Bacon L.L.P.
Miami Center, Suite 3200 | 201 S. Biscayne Blvd. | Miami, Florida 33131-4332 | t 305.358.5171

**COUNT II – Indirect Infringement**
**Excel Induces Infringement of the '608 Patent Under 35 U.S.C. § 271(b).**

52. Paragraphs 1 through 43 are incorporated by reference herein.

53. With knowledge of the '608 patent, Excel encourages and instructs users to create and use infringing health care technology solutions using the BedComm platform. Excel provides the BedComm platform to its customers and encourages their use, knowing or willfully blind to the fact, that the induced acts (customers integrating the BedComm platform with preexisting electronic medical record infrastructure for example) constitute infringement of the claims of the '608 patent.

54. Excel induces its customers to make, use, sell, offer for sale and/or import products that include instructions to perform and services that do perform the methods recited in the claims.

55. Thus, given that Excel provides technical support regarding, sells, offers, advertises, encourages, teaches, and actively instructs customers how to use the BedComm platform to perform the claimed methods, Excel's knows that its customers' acts (following Excel's guidance) constitute infringement of the '608 patent—or Excel willfully blinded itself to that fact.

56. Excel has knowingly induced its customers' infringement of the '608 patent and specifically intended to encourage its customers to infringe the '608 patent since receiving actual notice from Plaintiff regarding the infringement (the August 2, 2016 letter). On information and belief, Excel's sales force, marketing force, and other company representatives have and continued to actively encourage Excel's customers to use the BedComm platform to make, use, offer, sell or import infringing identification and derivation methods and applications.

57. As the result of Excel's activities, encouragements, and instructions, and its customers' activities in utilizing technology of the claims of the '608 patent, Excel is liable for indirect infringement.

58. Given Excel's instruction, Excel's customers carry out the same and use those applications in an infringing manner. For example, Excel customers embed the functionality of the BedComm platform into preexisting electronic medical record infrastructure as instructed, supported and encouraged by Excel. The performance of the patented technology is attributable to Excel's customers, with each aspect of the claims being performed either by the customer directly or under the customers' direction and control.

59. Excel continued to provide its services and technologies described herein, used at the direction and control of Excel's customers, with the knowledge of, or willful blindness to, the fact that the induced acts constituted patent infringement.

60. As a direct and proximate result of Excel's acts of infringing the '608 patent, Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief in the form of damages no event less than a reasonable royalty to compensate for Excel's infringement.

61. Excel has knowingly, willfully, and deliberately induced infringement of the '608 patent in conscious disregard of Plaintiff's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

62. Upon information and belief, Excel will continue to induce infringement of the '608 patent, causing immediate and irreparable harm to Plaintiff unless this Court enjoins and restrains Excel's activities, specifically the acts of making, using, selling, offering for sale, and importing the BedComm platform, and instructing its customers to make, use, sell, offer for sale, and import products and services including the BedComm platform.

63. The induced infringement of the '608 patent by Excel has, and will, deprive Plaintiff and its parent corporation of sales, licensing fees, royalties or other related revenue which Plaintiff would have made or would enjoy in the future and will cause Plaintiff added injury and damage unless Excel is enjoined from inducing infringement of the '608 patent until the expiration of the '608 patent.

64. Excel has, under 35 U.S.C. § 271(b), indirectly infringed, and continues to indirectly infringe the claims of the '608 patent by, *inter alia*, supporting, instructing (e.g., via marketing materials), and encouraging Excel's customers to make, use, sell, offer for sale, and/or import applications that carry out the steps of the claims using Excel's BedComm platform.

**COUNT III – Contributory Infringement**
**Excel Contributorily Infringes the '608 Patent**

65. Paragraphs 1 through 43 are incorporated by reference herein.

66. Excel has contributed, and continues to contribute, to the direct infringement of one or more claims of the '608 Patent by its customers by, among other activities, offering to sell or by selling within the United States its BedComm platform and its components, including but not limited to the medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel, knowing such systems and components to be especially made or especially adapted for use in infringing the '608 Patent.

67. By way of example only, the infringing components and systems offered for sale or sold by Excel include the BedComm platform and its associated medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel.

68. The accused BedComm platform and its components, including but not limited to medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel, are not staple articles or commodities of commerce suitable for substantial noninfringing use. These systems and components have no substantial noninfringing uses because, on information and belief, they cannot be used, in any practical sense, for purposes other than causing and/or contributing to the infringement of the '608 Patent.

69. Excel has had knowledge of the '608 Patent and of the infringing nature of its actions since at least August 2, 2016, when it received a letter from counsel for Plaintiff regarding patent infringement.

70. By continuing the previously stated acts, Excel has the specific intent to contribute to the infringement of the '608 Patent and is therefore liable under 35 U.S.C. §271(c).

71. As a result of the previously stated acts, Excel has damaged, and is continuing to damage, Plaintiff.

**COUNT IV – Direct Infringement**
**Excel Directly Infringes the '957 Patent Under 35 U.S.C. § 271(a).**

72. Paragraphs 1 through 43 are incorporated by reference herein.

73. Plaintiff alleges direct infringement in view of Excel's BedComm platform, including the medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel.

74. Excel has directly infringed, continues to directly infringe, and—unless enjoined—will continue to infringe the claims of the '957 patent by making, using, selling, offering for sale and/or importing the BedComm platform.

75. The BedComm platform includes computer-executable instructions for performing (and does perform) each element recited in claims 1 - 19 of the '957 patent. For example, the BedComm platform performs a method for electronically transferring data associated with a patient from a medical device to an electric medical record that corresponds to the patient, that method comprising each step recited by claim 1 of the '957 patent. Further, infringement allegations for claims 1 – 19 of the '957 patent are set forth in as Exhibit 4. The infringement analysis, and the exemplary evidence cited therein, is submitted without limitation and is subject to further modification as this action continues.

76. As a result of Excel's infringement of the '957 Patent, Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief in the form of damages for no event less than a reasonable royalty to compensate for Excel's infringement.

77. Excel has knowingly, willfully, and deliberately infringed the '957 patent in conscious disregard of Plaintiff's rights, making this case exceptional within the meaning of 35

U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284. As explained here, Excel had notice of Plaintiff's patent infringement claim—but still continued to carry out the acts described herein.

78. Excel has demonstrated that it will continue to infringe the '957 patent, causing immediate and irreparable harm to Plaintiff unless this Court enjoins and restrains Excel's activities.

79. The infringement of the '957 patent by Excel has, and will, deprive Plaintiff and its parent corporation of sales, licensing fees, royalties and other related revenue which Plaintiff would have made or would enjoy in the future and will cause Plaintiff added injury and damage unless Excel is enjoined from infringing the '957 patent until the expiration of the '957 patent.

**COUNT V – Indirect Infringement**
**Excel Induces Infringement of the '957 Patent Under 35 U.S.C. § 271(b).**

80. Paragraphs 1 through 43 are incorporated by reference herein.

81. With knowledge of the '957 Patent, Excel encourages and instructs users to create and use infringing health care technology solutions using the BedComm platform, as explained in greater detail below. Excel provides the BedComm platform to its customers and encourages their use, knowing or willfully blind to the fact, that the induced acts (customers integrating the BedComm platform with preexisting electronic medical record infrastructure for example) constitute infringement of the claims of the '957 patent.

82. Excel induces its customers to make, use, sell, offer for sale and/or import products that include instructions to perform and services that do perform the communication and transmission method recited in the claims.

83. Thus, given that Excel provides technical support regarding, sells, offers, advertises, encourages, teaches, and actively instructs customers how to use the BedComm platform to perform the communication and transmission methods, Excel knows that its

customers' acts (following Excel's guidance) constitute infringement of the '957 patent—or Excel willfully blinded itself to that fact.

84. Excel has knowingly induced its customers' infringement of the '957 patent and specifically intended to encourage its customers to infringe the '957 patent since receiving actual notice from Plaintiff regarding the infringement (the August 2, 2016 letter). On information and belief, Excel's sales force, marketing force, and other company representatives have and continued to actively encourage Excel's customers to use the BedComm platform to make, use, offer, sell or import infringing identification and derivation methods and applications.

85. Given Excel's instruction, Excel's customers carry out the same and use those applications in an infringing manner. For example, Excel customers embed the functionality of the BedComm platform into preexisting electronic medical record infrastructure as instructed, supported and encouraged by Excel. The performance of the patented technology is attributable to Excel's customers, with each aspect of the claims being performed either by the customer directly or under the customers' direction and control.

86. Excel continued to provide its services and technologies described herein, used at the direction and control of Excel's customers, with the knowledge of, or willful blindness to, the fact that the induced acts constituted patent infringement.

87. As the result of Excel's activities, encouragements, and instructions, and its customers' activities in utilizing technology of the claims of the '957 patent, Excel is liable for indirect infringement.

88. As a direct and proximate result of Excel's acts of infringing the '957 patent, Plaintiff has suffered injury and monetary damages for which Cerner is entitled to relief in the form of damages no event less than a reasonable royalty to compensate for Excel's infringement.

89. Excel has knowingly, willfully, and deliberately induced infringement of the '957 patent in conscious disregard of Plaintiff's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

90. Upon information and belief, Excel will continue to induce infringement of the '957 patent, causing immediate and irreparable harm to Plaintiff unless this Court enjoins and restrains Excel's activities, specifically the acts of making, using, selling, offering for sale, and importing the BedComm platform, and instructing its customers to make, use, sell, offer for sale, and import products and services including the BedComm platform.

91. The induced infringement of the '957 patent by Excel has, and will, deprive Plaintiff and its parent corporation of sales, licensing fees, royalties or other related revenue which Plaintiff would have made or would enjoy in the future and will cause Plaintiff added injury and damage unless Excel is enjoined from inducing infringement of the '957 patent until the expiration of the '957 patent.

92. Excel has, under 35 U.S.C. § 271(b), indirectly infringed, and continues to indirectly infringe the claims of the '957 patent by, *inter alia*, supporting, instructing (e.g., via marketing materials), and encouraging Excel's customers to make, use, sell, offer for sale, and/or import applications that carry out the steps of the claims using Excel's BedComm platform.

**COUNT VI – Contributory Infringement**
**Excel Contributorily Infringes the '957 Patent**

93. Paragraphs 1 through 43 are incorporated by reference herein.

94. Excel has contributed, and continues to contribute, to the direct infringement of one or more claims of the '608 Patent by its customers by, among other activities, offering to sell or by selling within the United States its BedComm platform and its components, including but not limited to the medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel, knowing such systems and components to be especially made or especially adapted for use in infringing the '957 Patent.

95. By way of example only, the infringing components and systems offered for sale or sold by Excel include the BedComm platform and its associated medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel.

96. The accused BedComm platform and its components, including but not limited to medical device integration ("MDI") application, Mobile Vitals Capture, and CarePanel, are not staple articles or commodities of commerce suitable for substantial noninfringing use. These systems and components have no substantial noninfringing uses because, on information and belief, they cannot be used, in any practical sense, for purposes other than causing and/or contributing to the infringement of the '957 Patent.

97. Excel has had knowledge of the '957 Patent and of the infringing nature of its actions since at least August 2, 2016, when it received a letter from counsel for Plaintiff regarding patent infringement.

98. By continuing the previously stated acts, Excel has the specific intent to contribute to the infringement of the '957 Patent and is therefore liable under 35 U.S.C. §271(c).

99. As a result of the previously stated acts, Excel has damaged, and is continuing to damage, Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to:

A. Enter judgment for Plaintiff as to Counts I through VI that Excel has infringed and is infringing one or more claims of the '608 and '957 patents;

B. Find that Excel has willfully infringed and is willfully infringing one or more claims the '608 and '957 patents;

C. Issue a permanent injunction enjoining Excel (including its officers, directors, employees, agents, customers and all persons acting in concert with them) from infringing the '608 and '957 patents;

D. Order that Excel pay compensatory damages to Plaintiff for Excel's infringement of the '608 and '957 patents, including but not limited to, damages in no event less than a reasonable royalty;

E. Find this to be an exceptional case, award Plaintiff treble damages due to Excel's deliberate and willful conduct, and order Excel to pay Plaintiff's costs of suit and attorneys' fees;

F. Award Plaintiff interest and costs under 35 U.S.C. § 284;

G. Award Plaintiff pre-judgment interest; and

H. Order such other relief as the Court considers appropriate.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all issues so triable as a matter of right.

Dated: March 10, 2017

By:____________________________

Humberto H. Ocariz
Florida Bar No.: 740860
SHOOK, HARDY & BACON LLP
Miami Center
201 S. Biscayne Blvd., Suite 3200
Miami, FL 33131
T: (305) 358-5171
F: (305) 358-7470
hocariz@shb.com

*Attorney for Plaintiff*